1

2

3

4

5

6

7

8                        IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   THOMAS JOHN HEILMAN,

11             Plaintiff,                    No. CIV S-08-2788 KJM EFB P

12        vs.

13   MICHAEL VOJKUFKA,

14             Defendant.            ORDER AND FINDINGS AND
                                     RECOMMENDATIONS
15   _____/

16        Plaintiff is a state prisoner proceeding without counsel in an action brought under 42

17   U.S.C. § 1983.  Defendant moves for summary judgment (Docket No. 39) and a protective order

18   (Docket No. 57).  Also before the court are several motions filed by the plaintiff: (1) for an order

19   prohibiting the defendant's use of plaintiff's mental health information (Docket No. 46); (2) for a

20   determination that defendant's declaration was made in bad faith (Docket No. 49); and (3) to

21   compel various discovery (Docket Nos. 64, 65, and 67).  For the reasons that follow, the

22   undersigned recommends that the motions for summary judgment and to find defendant's

23   declaration to be in bad faith be denied.  Additionally, plaintiff's motion to prohibit use of his

24   mental health information is denied, but his motion for a protective order governing such

25   information is granted.  The court also grants, in part, plaintiff's motions to compel.

26   ////

1

**I.  Mental Health Evidence and Protective Order**

Defendant filed as Exhibit E in support of his motion for summary judgment several documents taken from plaintiff's psychiatric records from the California Medical Facility ("CMF").  Dckt. No. 40, Ex. E.  Plaintiff seeks a court order prohibiting defendant from using his mental health information.  Dckt. No. 46.  Plaintiff also asks the court to sanction defense counsel as well as CMF Litigation Coordinator B.C. Williams and CMF Custodian of Medical Records Anna Lovey.  Plaintiff argues that the release of his mental health information to defense counsel violated the California Civil Code and the California Department of Corrections and Rehabilitation Operating Manual (hereinafter "DOM"), because it was not made with his consent or pursuant to a court order or subpoena.  Defendant responds that he legally obtained the records because they are not privileged, that plaintiff has waived any interest he has in their confidentiality, and, somewhat confusingly, that plaintiff's records are protected by HIPAA and defendant failed to comply with HIPAA, but that plaintiff's remedy should be, at most, a protective order.

**A.  State Law**

Plaintiff argues that defendant violated the California Information Practices Act (Cal. Civil Code §§ 1798-17.98.78) (hereinafter "IPA") by obtaining his psychiatric records without his consent, a court order, or a subpoena.  The IPA does restrict disclosure of personal records to certain situations, including where the disclosing party has obtained the prior written consent of the individual to whom the record pertains or pursuant to a subpoena or court order.  Cal. Civ. Code § 1798.24(a), (k).  However, the IPA also provides that it shall not be deemed to abridge the rights of litigants under California's statutory and common-law discovery rules.  *Id.* § 1798.71.

In California, discovery may be had of communications between a psychiatric provider and a patient where the patient has raised the specific condition in litigation.  *In re Lifschutz*, 2 Cal.3d 415, 433-435 (1970).  In such a situation, the patient-litigant loses, or waives, his interest

in the confidentiality of those communications insofar as they pertain to the specific mental conditions raised by the plaintiff in the litigation.  *Id.*  In this case, plaintiff has alleged that he "suffers from severe depression and induced paranoia," that recreational therapy on the yard is provided to him as part of his treatment for those conditions, that defendant deprived him of such therapy for 30 days, and that the denial "caused severe emotional distress and additional psychological trauma" because "physical therapy and exercise eases plaintiff's psychological and mental problems."  Compl., Dckt. No. 1, at 12-13.  Plaintiff has thereby placed his severe depression and paranoia at issue in this case and waived his interest in the confidentiality of his psychiatric records as to those conditions.  Exhibit E does not contain documents revealing or discussing other conditions not placed in issue by plaintiff.  Accordingly, the release of that information to defendant was lawful under California discovery law and therefore did not violate the IPA.

Plaintiff also argues that the release of his psychiatric information to defendant violated the DOM.  The DOM specifically provides, however, that "[c]opies of health records shall be made available for review . . . at the request of the State AG's office."  DOM § 91070.8.3.

Moreover, federal privilege law, rather than state privilege law, applies in this federal court action containing solely federal claims.  *See Agster v. Maricopa County*, 422 F.3d 836, 839 (9th Cir. 2005) (stating that the federal court is not bound to apply a state-law privilege).

For those reasons, the court cannot conclude that California law provides a basis for prohibiting defendant from using the psychiatric records contained in defendant's Exhibit E to the motion for summary judgment or for sanctioning defense counsel, Mr. Williams, or Ms. Lovey.

**B.  Federal Law**

The disclosure and use of plaintiff's psychiatric records in this case implicates several federal laws: (1) a due process right to privacy; (2) the psychotherapist-patient privilege; and (3) the Health Information Portability and Accountability Act (hereinafter "HIPAA").  The court

1    will discuss each in turn.

2         The Ninth Circuit has recognized a limited right to informational privacy protected by the

3    federal Constitution's Due Process Clause.  *Seaton v. Mayberg*, 610 F.3d 530, 537-39 (9th Cir.

4    2010).  It is presently unclear whether and to what extent this right extends to prison psychiatric

5    records used in litigation.  *See id.* at 534 (holding that "prisoners do not have a constitutionally

6    protected expectation of privacy in prison treatment records when the state has a legitimate

7    penological interest in access to them.") and at 537-39 (discussing earlier Ninth Circuit cases,

8    which recognized a right to privacy in medical information in certain contexts).  Assuming that

9    prisoners do enjoy a constitutional right to privacy in their prison medical records, such a right is

10   waived when the a prisoner places his or her medical condition at issue in a lawsuit.  *Thomas v.*

11   *Carrasco*, Case No. 1:04-cv-05793-MJS (PC), 2010 U.S. Dist. LEXIS 108918, *9-12 (E.D. Cal.

12   Oct. 13, 2010); *Doe v. Marsh*, 918 F. Supp. 580, 585 (N.D.N.Y. 1996); *Ferrell v. Glen-Gery*

13   *Brick*, 678 F. Supp. 111, 112-13 (E.D. Pa. 1987).  Here, as discussed above, plaintiff has placed

14   his mental conditions in issue and thereby waived any constitutionally-protected interest in the

15   privacy of his psychiatric records pertaining to those conditions.

16        Federal courts also recognize a common-law privilege protecting the disclosure of

17   confidential communications between a patient and psychotherapist.  *Jaffee v. Redmond*, 518

18   U.S. 1, 12 (1996).  The privilege may be waived, however, when the patient files a lawsuit that

19   places the privileged communications in issue.  *See Sarko v. Penn-Del Directory Co.*, 170 F.R.D.

20   127, 130 (E.D. Pa.1997); *Vann v. Lone Star Steakhouse & Saloon, Inc*., 967 F. Supp. 346,

21   349-50 (C.D. Ill. 1997); *cf. Home Indem. Corp. v. Lane Powell Moss and Miller*, 43 F.3d 1322,

22   1326 (9th Cir. 1995) (applying waiver to attorney/client privilege).

23        The Supreme Court in *Jaffee* recognized that privileges may be waived, but did not

24   discuss in what circumstances the psychotherapist-patient privilege is waived.  *See* 518 U.S. at

25   18.  District courts have generally followed two approaches to determining whether the privilege

26   has been waived.  *Fritsch v. City of Chula Vista*, 187 F.R.D. 614, 621 (S.D. Cal. 1999); *Wilson v.*

*Nesbeth*, No. CIV S-06-1139 GGH P, 2010 U.S. Dist. LEXIS 120527, *2 (E.D. Cal. Oct. 29, 2010).  Some courts apply a broad test, finding waiver whenever emotional distress damages are sought.  *Fritsch*, 187 F.R.D. at 621-24 (collecting cases).  Other courts apply a narrower test, finding waiver only where emotional distress claims are more than mere "garden variety" or incidental emotional distress damages claims.  *Id.* at 624-29 (collecting cases); *Wilson*, 2010 U.S. Dist. LEXIS 120527 at *2-4 (following the narrower approach and finding no waiver where plaintiff did not seek damages for emotional injuries or allege that defendant's conduct in denying plaintiff a psychological evaluation caused plaintiff damage).

Even under a narrow approach, the court concludes that plaintiff has waived the psychotherapist-patient privilege with regard to Exhibit E.  Exhibit E contains: (1) a summary of therapy hours offered and provided to plaintiff in April and May 2007, including rehabilitation therapy[1]; (2) plaintiff's psychotherapist's notes regarding plaintiff's depression and paranoia and treatment therefor on June 10, 2007, May 11, 2007, and April 5, 12, 15, and 17, 2007.  Plaintiff has not simply alleged a "garden variety" claim for emotional distress, but instead has claimed that he "suffers from severe depression and induced paranoia," that recreational therapy on the yard is provided to him as part of his treatment for those conditions, that defendant deprived him of such therapy for 30 days, and that the denial "caused severe emotional distress and additional psychological trauma" because "physical therapy and exercise eases plaintiff's psychological and mental problems."  Compl. at 12-13.  Because plaintiff has alleged that defendant's conduct deprived him of psychotherapeutic treatment and exacerbated his mental problems,  plaintiff  has waived the psychotherapist-patient privilege with regard to the records contained in Exhibit E, and thus the privilege does not provide a basis for prohibiting defendant's use of Exhibit E or imposing sanctions.

---

[1] Plaintiff refers to "recreational" therapy on the yard in his pleadings, while the documents in his medical file denote "rehabilitation" therapy.  It is unclear whether these terms refer to the same therapy.

HIPAA places restrictions on certain health care entities' disclosure of health information, by, for example, requiring that an entity first obtain consent, a court order, or a subpoena. 45 C.F.R. § 164.512. Defendant states that "[i]t cannot be disputed" that the California Department of Corrections and Rehabilitation and CMF are subject to HIPAA and that plaintiff's health information is protected by HIPAA. Dckt. No. 56, Def.'s Opp'n to Pl.'s Mot. Seeking an Order at 6. Defendant states that he did not notify plaintiff of the use of his medical records because he believed the records were not privileged, but cites to no portion of HIPAA allowing a party to fail to comply with the Act out of such a belief. Defendant proposes a protective order to protect the information contained in Exhibit E.

The Ninth Circuit has held that HIPAA provides no private right of action. *Webb v. Smart Document Solutions, LLC*, 499 F.3d 1078, 1081 (9th Cir. 2007). The court therefore finds that plaintiff may not privately enforce any rights he may possess under HIPAA by obtaining an order prohibiting defendant from using his records in this action or sanctioning defense counsel, Mr. Williams, or Ms. Lovey. *See Smith v. Daniels*, No. 1:07-CV-2166-RWS, 2010 U.S. Dist. LEXIS 124736, *18-19 (N.D. Ga. Nov. 24, 2010) (denying plaintiff's request to strike medical information submitted by defendants because HIPAA provides no private right of action).

For the foregoing reasons, the court denies plaintiff's request for an order prohibiting defendant from using his mental health information and imposing sanctions. However, the court finds that a protective order is called for as provided below.

**C. Protective Order**

Due to defendant's apparent concession that HIPAA should have been complied with in this case, as well as in deference to plaintiff's privacy, the court will grant defendant's motion for a protective order (Docket No. 57) and direct the Clerk to remove Exhibit E (as well as its reproduction as Exhibit 2 to plaintiff's motion) from the court's electronic docket and file a copy under seal.

////

## II. Defendant's Declaration

Plaintiff has filed a motion seeking a determination that defendant's declaration in support of his motion for summary judgment was submitted in bad faith under Federal Rule of Civil Procedure 56(h).  That rule provides:

> If satisfied that an affidavit or declaration under this rule is submitted in bad faith or solely for delay, the court – after notice and a reasonable time to respond – may order the submitting party to pay the other party the reasonable expenses, including attorney's fees, it incurred as a result.  An offending party or attorney may also be held in contempt or subjected to other appropriate sanctions.

Plaintiff argues that defendant's declaration was submitted in bad faith because of "inaccuracies, discrepancies and contradictions" allegedly contained therein.  Plaintiff seeks sanctions against defendant and defense counsel, attorney fees, an order holding defendant or defense counsel in contempt, and leave to propound additional interrogatories.

The primary inaccuracy cited by plaintiff concerns the date on which the fight on the yard that is central to this lawsuit occurred.  Plaintiff's complaint alleges that, on April 4, 2007, defendant was berated by a superior correctional officer after he was absent from his assigned post when a fight between two inmates broke out on the yard.  Dckt. No. 1 at 7-8.  Defendant then began "speaking disrespectfully" to other inmates on the yard, and plaintiff "politely asked" him to "tone down his language and demeanor."  *Id.*  Defendant then unilaterally denied plaintiff access to the yard for 30 days.  *Id.*  Defendant's declaration states that the yard fight occurred on April 4th, but an attached entry from a unit log book has the date at April 3rd.  Other alleged "discrepancies" flow from this date uncertainty, such as who defendant's partner was on the date the fight occurred.

Defendant has submitted a notice of errata, stating that the fight occurred on April 3rd and changing all references in submitted documents which had stated that it occurred on April 4th.  Dckt. No. 63.  According to defendant, the log entry is a business record that should be relied on to establish the date and other submissions, including defendant's declaration, and that using the April 4th date were "an honest mistake by counsel."  Dckt. No. 58, Def.'s Opp'n to

Pl.'s Mot. for Determination of Bad Faith at 1-2 and Ex. A (Decl. of Kelli Hammond).  Plaintiff states that he remembers the fight as occurring on April 4th, but will stipulate to whatever date the court determines after the court has viewed certain documents that would establish the correct date.  These documents, such as a possible rules violation report issued to the combatant inmates and those created in investigating plaintiff's staff complaint against defendant, have been sought by plaintiff in discovery, but have not been produced.  *See* Discussion of plaintiff's discovery motions, below.  The court is unable to determine, based on the submissions to date, the correct date of the fight.

Nevertheless, the court finds no reason at this time to discredit defense counsel's assertion that defendant's declaration and other documents submitted by defendant used the April 4th date due to simple error.  While plaintiff's recollection that the fight occurred on April 4th, rather than April 3rd, may reveal a fact that is presently in dispute, it is not a basis for finding that defendant's declaration was submitted in bad faith.

The remaining "inaccuracies, discrepancies and contradictions" plaintiff contends are included in defendant's declaration are nothing more than additional instances in which plaintiff or plaintiff's witnesses dispute defendant's version of the facts.  The court cannot conclude that defendant is being dishonest simply because plaintiff presents different facts than defendant.  Accordingly, the undersigned recommends denial of plaintiff's motion for a determination that defendant's declaration was submitted in bad faith under Federal Rule of Civil Procedure 56(h).

Plaintiff seeks leave to propound 20 additional interrogatories to develop assertions made by defendant in his declaration in support of summary judgment and his discovery responses.  The deadline for propounding interrogatories passed on February 16, 2010 (except as to certain specific interrogatories, which the court allowed plaintiff to serve by August 24, 2010).  Dckt. Nos. 18, 38.  As the deadline has passed, the court construes this request as a request to modify the schedule under Federal Rule of Civil Procedure 16(b).

////

1    A schedule may be modified upon a showing of good cause. Fed. R. Civ. P. 16(b). Good

2    cause exists when the moving party demonstrates he cannot meet the deadline despite exercising

3    due diligence. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

4    Plaintiff states that he seeks the discovery to develop claims made by defendant in response to

5    plaintiff's prior interrogatories and in his declaration in support of his summary judgment

6    motion. While it is possible that the questions plaintiff wishes to ask could not have been asked

7    before plaintiff received defendant's initial responses and declaration, plaintiff delayed serving

8    his original set of interrogatories right up until the cut-off date and thus did not leave himself any

9    time to review defendant's first responses and then serve additional interrogatories before the

10   deadline passed. In addition, plaintiff's interrogatories already include questions posed in

11   response to defendant's declaration. Thus, it appears that plaintiff had the opportunity to

12   question defendant regarding his declaration before the discovery deadline passed. Plaintiff has

13   not shown that he could not have served the questions he now wishes to ask of defendant prior to

14   the discovery cut-off if he had acted diligently. Accordingly, the court denies plaintiff's request

15   to propound additional interrogatories. However, this denial is without prejudice – plaintiff may

16   renew his request to propound additional interrogatories by motion setting forth the

17   interrogatories he wishes to pose and explaining why he could not pose them prior to the

18   discovery deadline.

19   **III.  Defendant's Motion for Summary Judgment**

20   Defendant moves for summary judgment on the grounds that: (1) no violation of the

21   Eighth Amendment occurred on the undisputed facts and (2) defendant is entitled to qualified

22   immunity. The court finds defendant's arguments unpersuasive for the reasons that follow.

23   **A.  Summary Judgment Procedure**

24   Summary judgment is appropriate when it is demonstrated that there exists "no genuine

25   issue as to any material fact and that the movant is entitled to a judgment as a matter of law."

26   Fed. R. Civ. P. 56(c)(2). Summary judgment avoids unnecessary trials in cases in which the

1  parties do not dispute the facts relevant to the determination of the issues in the case, or in which

2  there is insufficient evidence for a jury to determine those facts in favor of the nonmovant.

3  *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

4  242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th

5  Cir. 1994).  At bottom, a summary judgment motion asks "whether the evidence presents a

6  sufficient disagreement to require submission to a jury or whether it is so one-sided that one

7  party must prevail as a matter of law."  *Liberty Lobby*, 477 U.S. at 251-52.  "When reasonable

8  minds could differ on the material facts at issue, summary judgment is not appropriate."  *Nw.*

9  *Motorcycle Ass'n*, 18 F.3d at 1472.

10         Under summary judgment practice, the moving party

11               always bears the initial responsibility of informing the district
               court of the basis for its motion, and identifying those portions of
12               "the pleadings, depositions, answers to interrogatories, and
               admissions on file, together with the affidavits, if any," which it
13               believes demonstrate the absence of a genuine issue of material
               fact.

14

15  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting the prior language of Rule 56(c),

16  which was amended in 2007 to implement purely stylistic changes).  If the moving party meets

17  its initial responsibility, the opposing party must demonstrate – through evidence in the form of

18  affidavits and/or admissible discovery material – a factual dispute that is both material (i.e. it

19  affects the outcome of the claim under the governing law) and genuine (i.e., the evidence is such

20  that a reasonable jury could return a verdict for the nonmoving party).  Fed. R. Civ. P.

21  56(c)(1)(A); *Anderson*, 477 U.S. at 248-50; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

22  475 U.S. 574, 586 n.11 (1986).  Alternatively, the opposing party may demonstrate that a fact is

23  genuinely disputed by "showing that the materials cited [by the moving party] do not establish

24  the absence . . . of a genuine dispute, or that [the moving] party cannot produce admissible

25  evidence to support the fact."  Fed. R. Civ. P. 56(c)(1)(B); *Matsushita*, 475 U.S. at 586.

26  Summary judgment should be entered, after adequate time for discovery and upon motion,

against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 322. Thus, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323.

In resolving a summary judgment motion, the court examines the pleadings, the discovery and disclosure materials on file, and any affidavits filed by the parties. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in his or her favor. *Anderson*, 477 U.S. at 255; *Matsushita*, 475 U.S. at 587. Nevertheless, it is the opposing party's obligation to produce a factual predicate from which a favorable inference may be drawn. Fed. R. Civ. P. 56(c); *see Richards v. Nielsen Freight Lines*, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), *aff'd*, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted).

On August 7, 2009, the court informed plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. *See Rand v. Rowland*, 154 F.3d 952, 955-60 (9th Cir. 1998) (en banc), *cert. denied*, 527 U.S. 1035 (1999) (holding that either the district court or the moving party must inform a pro se prisoner of the requirements of Rule 56), and *Klingele v. Eikenberry*, 849 F.2d 409, 411-12 (9th Cir. 1988).

////

////

////

////

////

**B.  Background**

Plaintiff's verified complaint[2] alleges as follows:

On April 4, 2007, plaintiff was removed from rehabilitative therapy for Enhanced Outpatient Program (E.O.P.) status inmates[3] on the exercise yard at CMF-Vacaville prison by Correctional Officer Vojkufka.  C/O Vojkufka the arbitrarily decided to suspend and withhold all rehabilitative therapy and regular exercise yard time privileges for 30 days without notifying his superior officers and/or without benefit of filing any disciplinary infractions against plaintiff.

It is plaintiff's assertion that C/O Vojkufka became angry at the inmates under his supervision after he left his assigned post overseeing the N-Tower exercise yard and a fistfight occurred between inmates Bradley Parrish, RM N-204, and Kellums, V-48858, resulting in an intervention by other correctional officers as well as Sgt. Demarrs.  When C/O Vojkufka returned to the N-Tower exercise yard he was berated by Sgt. Demarrs for leaving his post.  C/O Vojkufka then began speaking disrespectfully to the remaining E.O.P. inmates.  When the plaintiff politely asked C/O Vojkufka to tone down his language and demeanor, C/O Vojkufka then singled-out plaintiff and threatened a disciplinary charge of "inciting a riot" . . ..

Plaintiff never at any time incited, instigated, asked, told, cajoled, or pressured other E.O.P. inmates to take any type of action in deeds or words.

In an attempt to intimidate and retaliate against plaintiff, C/O Vojkufka removed him from the exercise yard and admonished plaintiff that his therapy and exercise yard was suspended until he (Vojkufka) decides to permit plaintiff access for exercise and recreational therapy.

On April 5, 2007, plaintiff was informed by N-2 wing staff, C/O Larson, that C/O Vojkufka had stopped "all" of his rights and privileges to access the exercise yard.  C/O Larson stated he did not know the reason for suspension of privileges at it was "not based on disciplinary charges or instructions from administrative staff but directly from C/O Vojkufka."

Plaintiff attempted to resolve the denial of recreational therapy and exercise yard via talking to C/O Vojkufka.  When C/O Vojkufka reiterated "his" intention to deny access to the exercise yard for 30 days, plaintiff attempted to hand C/O Vojkufka a CDC form 602 appeal grievance asking for his right to exercise yard and recreational therapy for E.O.P. status inmates. . . .

---

[2] Because plaintiff is pro se, the court "must consider as evidence in his opposition to summary judgment all of [plaintiff]'s contentions offered in motions and pleadings, where such contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct."  *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

[3] *See* Dckt. No. 40, Def.'s SUF 7 ("The EOP provides the most intensive level of outpatient mental health care [in the prison system].")

1   Dckt. No. 1 at 7-8.  Along with his complaint, plaintiff submitted declarations of two inmates

2   who attest that they were on the yard at the time of the incident between plaintiff and defendant.

3   Both inmates, Dave Peck and Bernard Taylor, corroborate plaintiff's version of events.  Dckt.

4   No. 1, Ex. A.

5          Defendant maintains this version of events in his supplemental declaration (as corrected

6   by the notice of errata filed on October 22, 2010):

7          On the morning of April 3, 2007, I was working on the N-2 yard with my partner,
           Officer Kent. [¶] During exercise yard, two inmates began fighting.  I ordered all
8          inmates on the yard to get down on the ground in a prone position. [¶] All but
           three of the inmates complied with the order; two inmates wearing headphones
9          and inmate Heilman.

10         Inmate Heilman was the only inmate standing up.  He began shouting at me and
           the other inmates.  I ordered inmate Heilman to get on the ground and to stop
11         shouting at everyone.  Inmate Heilman finally went down on the ground, but he
           continued to shout and yell at the other inmates.
12
           Due to the volatility of the yard following the fight, I believed that Heilman's
13         shouting would incite the other inmates. [¶] I escorted inmate Heilman off the
           yard and back to his cell.
14
           After inmate Heilman was re-housed, I informed him that, per orders of Sergeant
15         Demars, he would not be allowed to attend exercise yard for ten days.  However, I
           explained to inmate Heilman that he would still be allowed to attend recreational
16         therapy on the yard. [¶] I also told inmate Heilman that I was going to issue a
           disciplinary violation because of his actions on the yard. [¶] I later documented
17         inmate Heilman's actions in the unit log book. . . .

18         On the afternoon of April 4, 2007, inmate Heilman refused to leave his cell for
           recreational therapy.  He continued to refuse to participate in any yard activities
19         for the next three or four weeks.

20   Dckt. No. 63, "DX C, Supp.".  Defendant submits records indicating that, of 19 hours of

21   rehabilitation therapy scheduled for plaintiff between April 4, 2007 and May 7, 2007, eleven

22   sessions were canceled by the clinician, six sessions were "refused," and one session was

23   completed.  Dckt. No. 40, Ex. E at 2, 5-6; *id.*, Ex. F at 2.

24          In his verified opposition to summary judgment, plaintiff vigorously disputes defendant's

25   declaration.  Dckt. Nos. 61, 62.  Plaintiff again asserts that defendant was absent from his post

26   during the fight, did not return to his post until after the fight had been quelled, did not order the

                                                   13

inmates to the ground, was berated by his superior for being absent from his post, "verbally

abuse[d]" the remaining inmates on the yard, and restricted plaintiff's yard access for 30 days

(not 10) as retaliation.  Dckt. No. 61 at 1-2.  Plaintiff further states that he did not shout or

otherwise incite other inmates and that defendant did not escort him to his cell or inform him that

he was restricted from the yard for 10 days.  *Id.* at 11-12.  According to plaintiff, he did not

refuse to participate in yard activities, including recreation or rehabilitation therapy, for three-to-

four weeks following the incident.  *Id.* at 12-13.

Plaintiff has also submitted a second declaration from Mr. Taylor.[4]  Dckt. No. 61, Ex. 1.

Mr. Taylor again corroborates plaintiff's version of events and disputes certain assertions made

by defendant.  *Id.*  According to Mr. Taylor: defendant never ordered inmates to get down on the

ground; plaintiff did not shout, rather, defendant taunted plaintiff; and, when plaintiff replied,

defendant threatened to write him up for inciting a riot.  *Id.*  Mr. Taylor also asserts that

defendant did not escort plaintiff back to his cell.  *Id.*

There clearly are disputed issues of fact.  The question remains whether these dispute

concern facts that are material; i.e. they make a difference to the outcome of plaintiff's claims.

## C. The Eighth Amendment

A prison official violates the Eighth Amendment's proscription of cruel and unusual

punishment where he or she deprives a prisoner of the minimal civilized measure of life's

necessities with a "sufficiently culpable state of mind."  *Farmer v. Brennan*, 511 U.S. 825, 834

(1994).  To succeed on such an Eighth Amendment claim, a prisoner must show that (1) the

defendant prison official's conduct deprived him or her of the minimal civilized measure of life's

necessities and (2) that the defendant acted with deliberate indifference to the prisoner's health

or safety.  *Id.* at 834.  To show deliberate indifference, the prisoner must establish that the

defendant knew of and disregarded an excessive risk to inmate health or safety; "the official

---

[4] Plaintiff informs the court that he attempted to get a supplemental declaration from Mr. Peck, but does not have a current address for him.

must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.  A prison official may thus be free from liability if he or she did not know of the risk or took reasonable action in response to the risk. *Id.* at 844.

Exercise is one of the basic human necessities protected by the Eighth Amendment, because "some form of regular outdoor exercise is extremely important to the psychological and physical well being" of inmates. *Spain v. Procunier*, 600 F.2d 189, 199 (9th Cir. 1979); *see also LeMaire v. Maass*, 12 F.3d 1444, 1457 (9th Cir. 1457 (9th Cir. 1993).  "[T]emporary denials of outdoor exercise must have adverse medical effects to meet the Eighth Amendment test, while long-term deprivations are substantial regardless of effects." *Lopez v. Smith*, 203 F.3d 1122, 1133 n.15 (9th Cir. 2000).

**D. Analysis**

**1.   The Material Facts Necessary to Establish a Constitutional Violation Are Disputed**

Defendant first argues that the undisputed evidence shows that defendant only restricted plaintiff's yard access for 10 days and that, even during that time, plaintiff could have accessed the yard for rehabilitation therapy but refused to go.  However, plaintiff has submitted his own testimony, as well as that of Mr. Peck, that defendant denied him access to the yard and to recreational therapy for 30 days.  Further, plaintiff's verified papers attest to adverse medical effects suffered as a result of defendant allegedly preventing him from accessing the yard.  While the notations in plaintiff's medical file indicating that rehabilitation therapy was either cancelled or "refused" during this period comprise some evidence that defendant was not responsible for plaintiff's lack of access to therapy on the yard, plaintiff attests that he never refused such therapy but that defendant prohibited him from attending.  Mr. Peck similarly declares, "I witnessed that C/O Vojkufka denied and withheld exercise yard and recreational therapy for 30 days."  A jury may well credit defendant's version of these events, but a jury could also accept

1  the version set forth by plaintiff and Mr. Peck.  Plaintiff has raised a triable issue as to whether,

2  and for how long, defendant prevented him from accessing the yard.

3        Defendant next argues that the undisputed facts show that defendant did not act with

4  deliberate indifference because defendant did not prohibit plaintiff from attending therapy on the

5  yard and believed plaintiff could attend such therapy "at any time."  As noted above, however,

6  plaintiff's evidence indicates that defendant did prevent plaintiff from accessing the yard for all

7  purposes, including therapy.  Defendant further contends that the undisputed facts show that

8  defendant denied yard access based on legitimate security concerns.  *See LeMaire*, 12 F.3d at

9  1458 (denial of outdoor exercise did not violate the Eighth Amendment where plaintiff presented

10 a grave security risk).  However, plaintiff's evidence indicates that plaintiff presented no security

11 risk, but instead that defendant acted out of anger and to retaliate against plaintiff.  Plaintiff has

12 therefore raised a triable issue as to whether defendant acted with deliberate indifference.

13        **2.     Defendant Is Not Entitled to Summary Judgment Based on Qualified**
          **Immunity**

14

15        Defendant next argues that he is entitled to qualified immunity from plaintiff's request

16 for damages.  "The qualified immunity inquiry has two parts:  (1) Was the law governing the

17 state official's conduct clearly established?  (2) Under that law could a reasonable state official

18 have believed his conduct was lawful?"  *Marquez v. Gutierrez*, 322 F.3d 689, 692 (9th Cir.

19 2003) (internal quotation marks omitted).  According to defendant, even taking the facts as

20 plaintiff alleges, it was not clearly established that defendant's actions were unlawful.  However,

21 it has long been established in the Ninth Circuit that denying an inmate outdoor exercise may

22 violate the Eighth Amendment.  *See Spain,* 600 F.2d at 199.  Several years before defendant's

23 alleged conduct, the Ninth Circuit clarified that even a temporary denial of outdoor exercise may

24 violate the Constitution if it causes adverse medical effects.  *Lopez*, 203 F.3d at 1133 n.15.

25 Viewing the facts in the light most favorable to plaintiff, a reasonable officer could not have

26 believed that a month-long retaliatory denial of outdoor exercise to an E.O.P.-status inmate,

based not on security concerns but rather anger, was lawful.

Accordingly, defendant's motion for summary judgment on the basis of qualified immunity must be denied.

**IV. Discovery Motions**

Plaintiff has filed three discovery motions:  one to compel defendant to respond to his requests for admissions and to further respond to his interrogatories (Docket No. 65) and two seeking further responses to a third-party subpoena for documents directed to CMF (Docket Nos. 64 and 67).  The court grants the motions in part as follows.

**A.  Motion to Compel**

Plaintiff's motion to compel is brief.  He states simply that he seeks "further and more complete responses to previously propounded interrogatories and requests for admissions" and an award of expenses and sanctions against defendant and defense counsel.  Dckt. No. 65 at 2. Fortunately, plaintiff has appended to the motion a meet-and-confer letter he apparently sent to defense counsel that reveals the substance of his dissatisfaction with defendant's discovery responses.  *Id.*, Ex. A.  In the letter, he requests further responses to interrogatories 2, 3, 5, 6, 10, 11, 13-16, 18, 22, 24, 30, and 32.  He also requests that defendant respond to his 43 requests for admissions.

Despite having been ordered by the court to respond to plaintiff's motion, defendant has submitted an opposition that addresses solely plaintiff's interrogatories.  Defendant does not provide any information with respect to the requests for admission, which plaintiff contends defendant never responded to.  Under the Federal Rules of Civil Procedure, a defendant's failure to timely respond to a plaintiff's requests for admissions operates as admitting the questions asked.  Fed. R. Civ. P. 36(a)(3).  Accordingly, the court sees no need at this time to order defendant to respond to the requests for admissions – if defendant has failed to timely respond, the matters in plaintiff's requests for admissions have been admitted by operation of Rule 36(a)(3).

1    As to the interrogatories, the court will address each in turn.

2    In Interrogatory No. 2, plaintiff asked, "What were your assigned duties and

3  responsibilities as the N-2 Tower Exercise Yard Supervisory Officer on 4-4-2007?"  Defendant

4  objected because the question assumed he was a "supervisory officer," when he is a

5  "Correctional Officer" and does not "hold a supervisory position."  Defendant then listed his

6  general duties as a correctional officer.  Plaintiff argues that defendant supervises inmates on the

7  yard, and that he seeks defendant's specific duties while doing so.  Defendant contends that

8  plaintiff did not ask what defendant's specific duties were while supervising inmates on the yard

9  and cannot now compel a response to a question that was not asked.

10    The dispute over the use of the term "supervisory officer" aside, it is clear that, in

11  Interrogatory No. 2, plaintiff sought defendant's assigned duties while working on the exercise

12  yard on April 4, 2007.  Defendant failed to answer that question.  Accordingly, plaintiff's motion

13  to compel a further response to Interrogatory No. 2 is granted.

14    In Interrogatory No. 3, plaintiff asked, "How many Correctional Officers or staff

15  members are required to be present on the EOP exercise yards and/or the N-Tower yard when

16  occupied by inmates per CMF General Orders or Yard Post Orders on or about 4-4-2007?"

17  Defendant responded, "It depends on the number of inmates who are present on the yard, but

18  generally two yard officers are present during the EOP exercise yard."  Plaintiff argues that this

19  response was evasive, because defendant did not answer how many officers were *required* to be

20  on the yard, just how many are generally present.  The court agrees and grants plaintiff's motion

21  to compel a further response to Interrogatory No. 3.

22    In Interrogatory No. 5, plaintiff asked, "Who was your assigned staff partner (state name

23  of staff gender and ethnicity) while supervising Inmates on April 4, 2007, specifically

24  supervising the N-2 Tower Exercise Yard."  Defendant responded, "Officer Kent."  Plaintiff

25  notes that the unofficial yard log book entry for April 4, 2007 states that defendant's partner that

26  day was Officer Polk.  Defendant responds that he believed plaintiff wanted the name of the

partner on the day of the incident, which defendant argues occurred on April 3, 2007, when

Officer Kent was his partner.  Defendant further responds that the log book shows that his

partner on April 4, 2007 was Officer Polk, whose gender and ethnicity are not relevant.

Due to the dispute that exists over the date on which the incident on the yard occurred,

the gender and ethnicity of defendant's assigned partner on that day are relevant.  Plaintiff has

stated elsewhere that he observed that defendant's partner on that day was a black female officer.

It is reasonable for plaintiff to wish to determine whether Officer Polk is black and female to

determine whether it is possible that the incident occurred on April 3rd rather than April 4th, as

he currently believes.  Accordingly plaintiff's motion to compel a further response to

Interrogatory No. 5 is granted

In Interrogatory No. 6, plaintiff asked, "State the facts as you know them about the

altercation occurring on the N-Tower Yard on April 4, 2007, between N-2 wing inmates

Kellumms . . . and Bradley Parrish . . . ."  Defendant responded, "On April 4, 2007, at

approximately 9:15 a.m., inmate Kellums and Parrish were involved in a fight on the N-2 yard."

Plaintiff argues that defendant's response is incomplete as to "why" the inmates fought and "if

other inmates were involved."  Defendant replies that he does not know why the inmates fought,

that such information is immaterial, and that he provided the facts as he knows them, as plaintiff

asked.  The court agrees that defendant has properly answered the interrogatory.  Plaintiff's

motion to compel a further response to Interrogatory No. 6 is denied.

In Interrogatory No. 10, plaintiff asked, "Did Sergeant Demars respond to the Emergency

staff alarm of the fist-fight altercation on the N-Tower Yard on 4-4-2007 and personally

intervene in breaking up the altercation?"  Defendant objected on various grounds but also

responded that "assuming Plaintiff is asking whether Sergeant Demars responded to the alarm

that was activated when inmates Kellums and Parrish were fighting, yes, he responded to the

area, but the inmates complied with orders to get down, thus there was nothing to 'break up.'"

////

1    Plaintiff argues that defendant's response is vague and incomplete because he did not state

2    "how" Sergeant Demars intervened in the altercation.  The court agrees with defendant that his

3    response to Interrogatory No. 10 was proper and complete.  Plaintiff did not ask "how" Sergeant

4    Demars broke up the altercation; nevertheless, defendant informed plaintiff that Sergeant

5    Demars responded to the alarm but did not need to break up the fight as inmates had complied

6    with orders to get down.  Plaintiff's request for a further response to Interrogatory No. 10 is

7    denied.

8         In Interrogatory No. 11, plaintiff asked, "Was there a Serious 115 Rules Violation Report

9    (RVR) issued to Inmates Kellums and Parrish for their roles in the altercation on the N-Tower

10   yard on 4-4-2007?"  Defendant responded, "I do not know.  I did not write a disciplinary

11   violation for either Kellums or Parrish."  Plaintiff contends that this response is incomplete and

12   misleading, because defendant did not undertake to find out from CMF officials whether the

13   RVRs were issued and because defendant is in a position to know the answer due to his "claims

14   of assisting inmates with their physical health or mental well-being."  The court disagrees that

15   any claim defendant may have made about his communications with inmates shows that

16   defendant answered Interrogatory No. 11 dishonestly.  Further, defendant is not obliged to

17   discover information from third parties on plaintiff's behalf.  According, plaintiff's request for a

18   further response to Interrogatory No. 11 is denied.

19        In Interrogatory No. 13, plaintiff asked, "What were the facts surrounding the removal of

20   inmates from the N-Tower yard 'after' the altercation on 4-4-2007?"  Defendant objected that

21   the question was "vague and ambiguous as to which inmates Plaintiff is referring," but

22   responded that "assuming Plaintiff is asking the circumstances surrounding his removal from the

23   yard following the incident between inmates Kellums and Parrish, Plaintiff was removed because

24   he began shouting and I believed that his refusal to follow orders to get down might lead to

25   further disruption on the yard.  Once Plaintiff finally complied with orders, he was placed in

26   restraints and escorted from the yard."  Plaintiff argues that defendant's response is incomplete,

misleading, and intentionally vague because it does not include facts surrounding the removal of other inmates who were allegedly escorted from the yard at the same time as plaintiff and additionally complains that defendant's statement that plaintiff was placed in restraints is a "claim that has never before been alleged."  Defendant is not precluded from stating "new" facts in response to discovery requests.  However, the court agrees that defendant has failed to fully respond to the request for facts surrounding the removal of inmates from the yard following the fight.  To the extent that defendant has knowledge of other inmates being removed from the yard following the fight, the court orders defendant to provide a further response to Interrogatory No. 13 stating the facts surrounding their removal.

In Interrogatory No. 14, plaintiff asked, "List the names of <u>ALL</u> the inmates removed from the N-Tower exercise yard on 4-4-2007."  Defendant responded, "All of the inmates who were on the yard were removed and the yard was closed down for the day following the altercation between Inmates Kellums, Parrish, and following Plaintiff's outburst."  Plaintiff argues that this response is evasive, incomplete, and misleading, because plaintiff was removed with three other inmates while other inmates remained.  Defendant replies that he answered the question asked; that plaintiff did not ask for the names of the inmates removed *with* him.  The court disagrees.  While plaintiff's question may not be a model of clarity, defendant should reasonably have understood that plaintiff sought the names of the inmates who were separately removed, rather than a response that all the inmates were eventually "removed."  Plaintiff's request for a further response to Interrogatory No. 14 is granted.

In Interrogatory No. 15, plaintiff asked, "Please explain why you did not list the names of those inmates removed from the N-Tower yard on 4-4-2007 in the Yard Log Book or the N-Wing Log Book for wearing headphones on the yard?"  Defendant responded, "They were counseled for wearing headphones by Sergeant Demars, and then they complied with orders to get down on the ground.  Only plaintiff remained standing and refused to comply with orders to get on the ground."  Plaintiff claims that defendant's response is inaccurate and misleading,

because plaintiff believes the response is in conflict with other responses provided by defendant. However, the court agrees with defendant that he has properly answered the question. Plaintiff's request for a further response to Interrogatory No. 15 is denied.

In Interrogatory No. 16, plaintiff asked, "Please cite the rule, regulation, CDCR Policy or CMF General Order which prohibits Inmates from wearing headphones or earbuds on the CMF EOP yards on or about the date of 4-4-2007?" Defendant responded, "Pursuant to the Department Operations Manual, § 54030.10.6.1, 'Entertainment appliances shall have earphones or earplugs that shall be worn on the head or in the ear when the appliance is in use *within the housing unit*.' (emphasis added)." Plaintiff contends that the response is intentionally vague and misleading because the cited authority does not expressly prohibit use of earbuds on the yard. Plaintiff's disagreement with defendant's interpretation of the cited regulation does not provide a basis for additional discovery. Plaintiff's motion to compel a further response to Interrogatory No. 16 is denied.

In Interrogatory No. 18, plaintiff asks, "Under which rule, regulation, CDCR policy or CMF General Order did you invoke for removing Inmate Heilman . . . from the N-Tower yard on 4-4-2007?" Defendant responded by citing to several provisions in the California Code of Regulations. Plaintiff argues that the response is vague and improper and asks whether defendant claims that he cited each regulation to plaintiff as he removed him from the yard. The court agrees with defendant that he properly asked the question posed. Plaintiff did not ask whether defendant informed plaintiff of the regulation supporting his removal from the yard as he was being removed. Plaintiff's motion to compel a further response to Interrogatory No. 18 is denied.

In Interrogatory No. 20, plaintiff asked, "The Defendant Vojkufka submitted a Declaration to the Court claiming Inmate Heilman shouted at him on 4-4-2007 on the N-Tower Yard, what was Inmate Heilman shouting?" Defendant responded, "I cannot recall the exact words of what Heilman was yelling. He was refusing to get down and he was yelling in what

1    appeared to be an attempt to incite a riot." Plaintiff argues that defendant's response is improper

2    because it includes "hyperbole" and allegations of plaintiff's misconduct. The court finds

3    defendant's response proper, and plaintiff's request for a further response is denied.

4        In Interrogatory No. 22, plaintiff asked, "Is C/O Kent a female African-American staff

5    member and your partner on the day of the fist-fight altercation occurring on the yard on 4-4-

6    2007?" Defendant responded, "Yes." Plaintiff contends that the response requires clarification

7    due to the date discrepancy discussed earlier in this order. Defendant has informed plaintiff that

8    Officer Kent is an African-American female who was his partner on April 3, 2007. The court

9    has ordered defendant to provide plaintiff with the ethnicity and gender of his partner on April 4,

10   2007. Accordingly, no further response to Interrogatory No. 22 is necessary.

11       In Interrogatory No. 24, plaintiff asked, "Please explain the facts of why you did not

12   count inmates attending the N-2 yard at 9:00 a.m. as documented on an unofficial yard log book

13   submitted as an exhibit to the Court for the day of April 3, 2007." Defendant objected to the

14   request as vague, ambiguous, argumentative, assuming facts not established, and not reasonably

15   calculated to lead to the discovery of admissible evidence, but responded that "the inmates were

16   counted at yard. Recreational therapy yard keeps a list, but that is kept by medical staff."

17   Plaintiff argues that defendant did not answer the question posed. Defendant argues that he

18   properly responded because "[m]edical staff, rather than Correctional staff, keep a log of the

19   inmate count." The court agrees that defendant did not answer why he personally did not count

20   the inmates, instead making use of the passive voice to vaguely respond that the inmates "were

21   counted." Plaintiff's motion to compel a further response to Interrogatory No. 24 is granted.

22       In Interrogatory No. 30, plaintiff asked, "Please explain if the Inmates involved in the

23   fist-fight altercation on the N-Tower yard on 4-4-07 were restricted from access to the yard and

24   the amount of restricted yard they received." Defendant objected that the request was vague,

25   ambiguous, immaterial, and not reasonably calculated to lead to the discovery of admissible

26   evidence, but responded, "I don't know if they were restricted from yard." Plaintiff contends

that this response is incomplete and misleading, because defendant did not undertake to find out

from CMF officials whether the combatant inmates were restricted from the yard and because

defendant is in a position to know the answer due to his claim that inmates often complain to

him.  The court disagrees that any claim defendant may have made about his communications

with inmates shows that defendant answered Interrogatory No. 30 dishonestly.  Further,

defendant is not obliged to discover information from third parties on plaintiff's behalf.

According, plaintiff's request for a further response to Interrogatory No. 30 is denied.

In Interrogatory No. 32, plaintiff asked, "Please provide the current addresses of potential

inmate witnesses David Peck . . ., Bernard Taylor . . ., Kellums . . ., and Bradley Parrish . . .

and/or their parole agents addresses should they be on parole and/or their facility of incarceration

should they be incarcerated."  Defendant responded with addresses for Mssrs. Taylor and Peck

as well as Mr. Kellum's current place of incarceration.  Defendant further responded that Mr.

Parrish could not be located.  Plaintiff complains that defendant's response did not provide the

correct address for Mr. Peck or his parole agent's name and address.  Defendant replies that he

has no other address for Mr. Peck, but does not provide any information about why the name and

address of Mr. Peck's parole agent were not provided to plaintiff.  The court grants plaintiff's

motion to compel defendant to provide a further response to Interrogatory No. 32 providing the

name and address of Mr. Peck's parole agent.

Plaintiff seeks an award of $500.00 in expenses and the imposition of sanctions against

defendant and defense counsel under Federal Rule of Civil Procedure 37(a)(5) and 37(d).  The

court declines to impose sanctions at this time.  As Rule 36(a)(3) provides an adequate remedy to

plaintiff for defendant's apparent failure to respond to his requests for admissions, the court finds

that an award of expenses for moving to compel such responses would be unjust.  As to the

interrogatories, the court finds that defendant's responses were substantially justified and thus

declines to issue an award of expenses.  Fed. R. Civ. P. 36(a)(5).

////

**B. Third-Party Subpoena**

Plaintiff has submitted two motions regarding the document subpoena he served on CMF. Dckt. Nos. 64 & 67.  In the first, he complained that no response had been provided "as of 10-26-2010."  However, defense counsel, working with CDCR and CMF, provided a response on October 29, 2010.  Because defendant provided a response, plaintiff's motion to compel a response (Docket No. 64) is denied.

Plaintiff thereafter submitted a second motion regarding the third-party subpoena, taking issue with the responses provided and seeking an order to compel further responses.  Dckt. No. 67.  The court ordered defendant to file an opposition or statement of no opposition to the motion on December 15, 2010.  Defendant filed an opposition to plaintiff's first motion to compel, Docket No. 64, but did not file any response to the motion to compel further responses, Docket No. 67.  Accordingly, the court construes defendant's failure to file an opposition as a waiver of opposition.  The court notes that defense counsel, the California Attorney General's Office, prepared CMF's response to the subpoena.  In addition, plaintiff served the motion on CMF itself via mail addressed to the warden and litigation coordinator.  CMF has not filed any opposition to the motion.

The court has reviewed the responses to the third-party subpoena prepared by defense counsel on behalf of CMF and finds that further responses to Document Requests Nos. 3, 4, 5, and 6 must be provided.  Document Request No. 3 seeks records "of the investigation and/or results of the investigation of plaintiff's 602 staff complaint appeal against defendant, M. Vojkufka, C/O, conducted by J. Foster, Correctional Lieutenant, Institutional Log No. CMF-M-07-01295," including a "Confidential Supplement," and records of interviews with Mssrs. Larson, Coleman, Demarrs, and Bloehm.  Document Request No. 4 seeks records of "interviews with the defendant M. Vojkufka, C/o, concerning the allegations against him" in plaintiff's staff complaint.  Document Request No. 5 seeks documentation of interviews with inmate witnesses to the incident on the yard.  Document Request No. 6 seeks records of the investigation of the

fight between Mssrs. Kellums and Parrish and consequent disciplinary proceedings.  CMF objected to these requests in part on the grounds that they sought information that was privileged or confidential under California law, citing California Penal Code §§ 832.5 and 832.7.

The cited sections of the California Penal Code provide for the confidentiality of peace officer personnel records in state litigation.  While generally providing that such records are confidential, California law also specifically recognizes that the records are discoverable upon a showing that they are material to the litigation.  Cal. Evid. Code § 1043.  On their face, the document requests propounded by plaintiff seek records material to the issues in this case.

Moreover, federal privilege law, rather than state privilege law, applies in this federal court action containing solely federal claims.  *See Agster*, 422 F.3d at 839.  In federal court, the personnel records of officers defending federal civil rights actions, while containing sensitive information, are within the scope of discovery.  *Soto v. City of Concord*, 162 F.R.D. 603, 614-15 (N.D. Cal. 1995); *Hampton v. City of San Diego*, 147 F.R.D. 227, 230-31 (S.D. Cal. 1993); *Miller v. Pancucci*, 141 F.R.D. 292, 296 (C.D. Cal. 1992).  Plaintiff's requests are relevant to the issues presented by this case.

Federal law does recognize a qualified  privilege for official information, including government personnel files.  *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir.1990).  The official information privilege exists to ensure disclosure of discoverable information without compromising the state's interest in protecting the privacy of law enforcement officials and in ensuring the efficacy of its law enforcement system.  *Kelly v. City of San Jose*, 114 F.R.D. 653, 662-63 (N.D. Cal. 1987).  "In the context of civil rights suits against [corrections officials], this balancing approach should be 'moderately pre-weighted in favor of disclosure.'"  *Soto*, 162 F.R.D. at 613 (quoting *Kelly*, 114 F.R.D. at 661). Whether personnel files are privileged depends upon the balance of "potential benefits of disclosure against potential disadvantages; if the latter is greater, the official information privilege may bar discovery."  *Miller*, 141 F.R.D. at 299.

////

1    Because "privileges operate in derogation of the truth finding process the law places the burden

2    of proving all elements essential to invoking any privilege on the party seeking its benefits."

3    *Kelly*, 114 F.R.D. at 662; Fed. R. Civ. P. 26(b)(5).

4            CMF has not complied with its obligation to prepare a proper privilege log to assert its

5    claims of privilege here.  Under Federal Rule of Civil Procedure 45(d)(2), a third-party subject to

6    a subpoena has certain obligations when claiming a privilege.  The party asserting privilege

7    must: (1) expressly make the claim of privilege and (2) "describe the nature of the withheld

8    documents, communications, or tangible things in a manner that, without revealing information

9    itself privileged or protected, will enable the parties to assess the claim."  Fed. R. Civ. P.

10   45(d)(2).  Further, to invoke the official information privilege the party opposing discovery must,

11   in addition to a privilege log, submit an affidavit from an official of the agency in control of the

12   materials sought addressing the following concerns: (1) an affirmation that the agency has

13   maintained the confidentiality of the materials it refuses to disclose; (2) a statement that the

14   affiant personally has reviewed the material in question; (3) a specific identification of the

15   privacy interests that would be threatened by disclosure to the plaintiff; (4) a description of how

16   disclosure pursuant to a "carefully crafted protective order would create a substantial risk of

17   harm to significant governmental or privacy interests;" and (5) a projection of the extent of harm

18   that would befall the threatened interests if disclosure were ordered.  *Kelly*, 114 F.R.D. at 670.

19   This showing is required so that the court has the information it needs to make a reasoned

20   assessment of the weight of the interests, in the particular situation before the court, against the

21   requested disclosure.  The more specific the government's affidavit, the better it equips the court

22   to do its job. *Id.*

23           The court cannot find that the documents plaintiff seeks are privileged unless CMF

24   provides the specific information required by Rule 45(d)(2) and *Kelly*.  Accordingly, CMF shall,

25   within twenty-one days, either turn over the records sought in Document Requests Nos. 3, 4, 5,

26   and 6, or produce redacted copies of those documents together with a proposed protective order

1  that provides for the protection of sensitive information.  Any withheld information shall be

2  specifically itemized in a privilege log that satisfies federal law.  Additionally, CMF shall submit

3  any withheld information for in camera inspection.  Again, it was CMF's burden either to

4  produce the requested documents or move for a protective order.  Refusal to produce discovery

5  based on a blanket assertion of privilege and without a proper privilege log is not an appropriate

6  response to the discovery request.

7      The court declines to assess expenses against CMF or impose sanctions at this time.

8  However, CMF is admonished that failure to respond to the subpoena as required by Federal

9  Rule of Civil Procedure 45 and the authorities cited above may be cause for contempt under Rule

10  45(e).

11  **V. Order and Recommendation**

12      For the reasons provided above, it is hereby ORDERED that:

13      1.  Plaintiff's motion for an order prohibiting defendant from using his mental health

14  information and for sanctions (Docket No. 46) is denied.

15      2.  Defendant's motion for a protective order (Docket No. 57) is granted, and the court

16  orders as follows:

17          a.  With respect to any of plaintiff's medical records (including psychiatric

18  records) that are in defendant's possession, defendant must limit access to such records to

19  defense counsel and himself.  Neither defense counsel nor defendant may use the records for any

20  purpose other than defending this lawsuit unless otherwise permitted by law.  Defendant and

21  defense counsel must return the records to their custodian at CMF or destroy them at the end of

22  this proceeding.  *See* 45 C.F.R. § 164.512(e)(1)(v).

23          b.  With respect to the 14 pages of plaintiff's psychiatric records that have been

24  filed as Exhibit E to defendant's statement of undisputed facts (Docket No. 40, Exhibit E) and

25  reproduced as Exhibit 2 to plaintiff's motion for a court order (Docket No. 46, Exhibit 2), the

26  court directs the Clerk to remove those pages from the court's electronic filing system and to file

28

a copy of those exhibits under seal.

3. Plaintiff's motion to compel responses to his requests for admissions and further responses to his interrogatories (Docket No. 65) is granted with respect to Interrogatories Nos. 2, 3, 5, 13, 14, 24, and 32 as provided in this order, and is otherwise denied. Within 21 days of the date of this order, defendant shall provide further responses to Interrogatories Nos. 2, 3, 5, 13, 14, 24, and 32 as provided in this order.

4. Plaintiff's motion to compel responses to his third-party subpoena (Docket No. 64) is denied.

5. Plaintiff's motion to compel further responses to his third-party subpoena (Docket No. 67) is granted in part as follows and otherwise denied:

a. CMF shall, within 21 days of the date of this order, either turn over the records sought in Document Requests Nos. 3, 4, 5, and 6  or produce redacted copies of those documents together with a proposed protective order that provides for the protection of sensitive information.  Any withheld information shall be specifically itemized in a privilege log that satisfies federal law.  Additionally, CMF shall submit any withheld information for in camera inspection.

b. The California Attorney General's Office, acting as counsel for defendant, has assisted CMF in responding to the third-party subpoena.  The court will assume that defense counsel will accept service of this order on behalf of CMF.  If defense counsel declines to accept service of the order on behalf of CMF, it shall so inform the court within five days of the date of this order.

6. Plaintiff's request for leave to propound 20 additional interrogatories, contained in Docket No. 49, is construed as a motion to modify the schedule under Federal Rule of Civil Procedure 16(b), and, so construed, is denied without prejudice.

////

////

Further, it is hereby RECOMMENDED that:

1. Defendant's motion for summary judgment (Docket No. 39) be denied; and

2. Plaintiff's motion for a determination that defendant's declaration was submitted in bad faith (Docket No. 49) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  February 17, 2011.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE