IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THOMAS JOHN HEILMAN,

      Plaintiff,                      No. CIV S-08-2788 KJM EFB P

    vs.

MICHAEL VOJKUFKA,

                              ORDER AND
      Defendant.           FINDINGS AND RECOMMENDATIONS

_____/

      Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Currently pending before the court are: (1) plaintiff's motion for summary judgment/motion for judgment on the pleadings (Docket Nos. 77, 82); (2) defendant's motion to strike plaintiff's motion for summary judgment (Docket No. 79); (3) plaintiff's motion to compel defendant to provide further interrogatory responses (Docket No. 80); (4) plaintiff's motion to compel the California Department of Corrections and Rehabilitation ("CDCR") to provide further discovery (Docket No. 81); and (5) plaintiff's renewed motion for a determination that defendant's declaration in support of his August 2, 2010 motion for summary judgment was submitted in bad faith (Docket No. 81). For the reasons provided below, the court recommends that plaintiff's motion for summary judgment/motion for judgment on the pleadings be stricken.

////

1

The court further recommends that plaintiff's renewed motion for a determination that defendant's declaration was submitted in bad faith be denied. Finally, the court orders that plaintiff's motions to compel be denied.

## I.     Plaintiff's Claim

Plaintiff's verified complaint alleges as follows:

On April 4, 2007, plaintiff was removed from rehabilitative therapy for Enhanced Outpatient Program (E.O.P.) status inmates[1] on the exercise yard at CMF-Vacaville prison by Correctional Officer Vojkufka. C/O Vojkufka the arbitrarily decided to suspend and withhold all rehabilitative therapy and regular exercise yard time privileges for 30 days without notifying his superior officers and/or without benefit of filing any disciplinary infractions against plaintiff.

It is plaintiff's assertion that C/O Vojkufka became angry at the inmates under his supervision after he left his assigned post overseeing the N-Tower exercise yard and a fistfight occurred between inmates Bradley Parrish, RM N-204, and Kellums, V-48858, resulting in an intervention by other correctional officers as well as Sgt. Demarrs. When C/O Vojkufka returned to the N-Tower exercise yard he was berated by Sgt. Demarrs for leaving his post. C/O Vojkufka then began speaking disrespectfully to the remaining E.O.P. inmates. When the plaintiff politely asked C/O Vojkufka to tone down his language and demeanor, C/O Vojkufka then singled-out plaintiff and threatened a disciplinary charge of "inciting a riot" . . . .

Plaintiff never at any time incited, instigated, asked, told, cajoled, or pressured other E.O.P. inmates to take any type of action in deeds or words.

In an attempt to intimidate and retaliate against plaintiff, C/O Vojkufka removed him from the exercise yard and admonished plaintiff that his therapy and exercise yard was suspended until he (Vojkufka) decides to permit plaintiff access for exercise and recreational therapy.

On April 5, 2007, plaintiff was informed by N-2 wing staff, C/O Larson, that C/O Vojkufka had stopped "all" of his rights and privileges to access the exercise yard. C/O Larson stated he did not know the reason for suspension of privileges at it was "not based on disciplinary charges or instructions from administrative staff but directly from C/O Vojkufka."

Plaintiff attempted to resolve the denial of recreational therapy and exercise yard via talking to C/O Vojkufka. When C/O Vojkufka reiterated "his" intention to deny access to the exercise yard for 30 days, plaintiff attempted to hand C/O Vojkufka a CDC form 602 appeal grievance asking for his right to exercise yard and recreational therapy for E.O.P. status inmates. . . .

---

[1] *See* Dckt. No. 40, Def.'s Statement of Undisputed Facts, Fact No. 7 ("The EOP provides the most intensive level of outpatient mental health care [in the prison system].")

Dckt. No. 1 at 7-8. Plaintiff alleges that defendant Vojkufka's actions violated his right to be free from cruel and unusual punishment under the Eighth Amendment.

Defendant denies the bulk of plaintiff's allegations, admitting only that: (1) plaintiff exhausted his administrative remedies; (2) defendant was employed as a correctional officer at CMF at the relevant time; and (3) plaintiff was removed from the yard on April 3, 2007[2] "and informed that he may not be able to attend regular yard for 10 days." Dckt. No. 17, Answer at 1-2. Defendant maintains the following version of events in his supplemental declaration filed in support of his August 2, 2010 motion for summary judgment[3] (as corrected by the notice of errata filed on October 22, 2010):

> On the morning of April 3, 2007, I was working on the N-2 yard with my partner, Officer Kent. [¶] During exercise yard, two inmates began fighting. I ordered all inmates on the yard to get down on the ground in a prone position. [¶] All but three of the inmates complied with the order; two inmates wearing headphones and inmate Heilman.
>
> Inmate Heilman was the only inmate standing up. He began shouting at me and the other inmates. I ordered inmate Heilman to get on the ground and to stop shouting at everyone. Inmate Heilman finally went down on the ground, but he continued to shout and yell at the other inmates.
>
> Due to the volatility of the yard following the fight, I believed that Heilman's shouting would incite the other inmates. [¶] I escorted inmate Heilman off the yard and back to his cell.
>
> After inmate Heilman was re-housed, I informed him that, per orders of Sergeant Demars, he would not be allowed to attend exercise yard for ten days. However, I explained to inmate Heilman that he would still be allowed to attend recreational therapy on the yard. [¶] I also told inmate Heilman that I was going to issue a disciplinary violation because of his actions on the yard. [¶] I later documented inmate Heilman's actions in the unit log book. . . .
>
> On the afternoon of April 4, 2007, inmate Heilman refused to leave his cell for recreational therapy. He continued to refuse to participate in any yard activities for the next three or four weeks.

---

[2] The parties currently dispute whether the incident occurred on April 3 or April 4, 2007. *See* Dckt. No. 74 at 7-8.

[3] Findings and Recommendations recommending that defendant's motion for summary judgment be denied are currently pending. Dckt. No. 74.

3

Dckt. No. 63, "DX C, Supp.".  Defendant submits records indicating that, of 19 hours of rehabilitation therapy scheduled for plaintiff between April 4, 2007 and May 7, 2007, eleven sessions were canceled by the clinician, six sessions were "refused," and one session was completed.  Dckt. No. 40, Ex. E at 2, 5-6; *id.*, Ex. F at 2.

**II.    Plaintiff's Motion for Summary Judgment/Judgment on the Pleadings**

On March 8, 2011, plaintiff filed a "Motion for Summary Judgment on Relief Based on the Pleadings . . . under Fed. Rule of Civil Procedure 56 and Local Rule 260."  Dckt. No. 77 at 1. In this two-page motion, plaintiff argues that judgment in his favor is warranted because the undersigned recommended that defendant's motion for summary judgment be denied and because,

> In the pleadings thus far in this case, Plaintiff has provided the Court compelling evidence that he would prevail at trial because of, but not limited to: inmate eye-witness accounts of the incidents in question, and the defendant's culpability and liability including the many discrepancies and contradictions rendered by the defendant in his Motion for Summary Judgment, responses to plaintiff's interrogatories and in his Declaration and other exhibits attached to the Motion for Summary Judgment.

*Id.* at 2.  Plaintiff neither cites to nor attaches those portions of the pleadings or other submissions in the case which establish "that he would prevail at trial."  Plaintiff's motion additionally fails to comply with any of the procedural requirements of Local Rule 260(a) and was filed well beyond the dispositive motion deadline (set at July 9, 2010 in the discovery and scheduling order, Docket No. 18).  Accordingly, defendant moved to strike plaintiff's motion as untimely and procedurally defective.  Dckt. No. 79.  The court construes that "motion" as an opposition to plaintiff's motion for summary judgment on the grounds that plaintiff's motion is untimely.

In response to defendant's motion to strike, plaintiff has recharacterized his motion as one for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) rather than one for summary judgment under Rule 56.  Accordingly, the court will treat the motion as one under Rule 12(c). Regardless of whether the motion is brought under Rule 12 or Rule 56, the motion is

4

1  subject to the dispositive motion deadline. Plaintiff has presented the motion well after the
2  deadline and has failed to present any argument as to why grounds exists to modify the pretrial
3  scheduling order to extend the deadline. *See* Fed. R. Civ. P. 16(b)(4). Because the motion is
4  untimely and plaintiff has neither asked for nor received an extension of the dispositive motion
5  deadline, the undersigned recommends that the court grant defendant's motion to strike.

6  In addition, plaintiff's motion is without merit. Rule 12(c) of the Federal Rules of Civil
7  Procedure provides: "After the pleadings are closed – but early enough not to delay trial – a
8  party may move for judgment on the pleadings." For purposes of a motion under Rule 12(c), the
9  allegations of the non-moving party must be accepted as true, and the allegations of the moving
10 party that have been denied are presumed false. *Hal Roach Studios v. Richard Feiner & Co.*,
11 896 F.2d 1542, 1550 (9th Cir. 1990). Judgment on the pleadings is appropriate only when the
12 moving party clearly establishes on the face of the pleadings that no material issue of fact
13 remains to be resolved and that it is entitled to judgment as a matter of law. *Enron Oil Trading*
14 *& Transportation Co. v. Walbrook Ins. Co. Ltd.*, 132 F.3d 526, 529 (9th Cir. 1997).

15 A prison official violates the Eighth Amendment's proscription of cruel and unusual
16 punishment where he or she deprives a prisoner of the minimal civilized measure of life's
17 necessities with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834
18 (1994). To succeed on such an Eighth Amendment claim, a prisoner must show that (1) the
19 defendant prison official's conduct deprived him or her of the minimal civilized measure of life's
20 necessities and (2) that the defendant acted with deliberate indifference to the prisoner's health
21 or safety. *Id.* at 834. To show deliberate indifference, the prisoner must establish that the
22 defendant knew of and disregarded an excessive risk to inmate health or safety; "the official
23 must both be aware of facts from which the inference could be drawn that a substantial risk of
24 serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official may thus
25 be free from liability if he or she did not know of the risk or took reasonable action in response
26 to the risk. *Id.* at 844.

5

1       The court is certainly cognizant that exercise is one of the basic human necessities
2   protected by the Eighth Amendment, because "some form of regular outdoor exercise is
3   extremely important to the psychological and physical well being" of inmates. *Spain v.
4   Procunier*, 600 F.2d 189, 199 (9th Cir. 1979); *see also LeMaire v. Maass*, 12 F.3d 1444, 1457
5   (9th Cir. 1457 (9th Cir. 1993). "[T]emporary denials of outdoor exercise must have adverse
6   medical effects to meet the Eighth Amendment test, while long-term deprivations are substantial
7   regardless of effects." *Lopez v. Smith*, 203 F.3d 1122, 1133 n.15 (9th Cir. 2000). However,
8   accepting defendant's allegations as true and the allegations he has denied as false, the pleadings
9   do not establish that defendant deprived plaintiff of necessary access to the yard, or that such a
10  deprivation was for a sufficient duration or caused adverse medical side effects so as to trigger
11  Eighth Amendment liability. Rather, defendant has denied the vast majority of plaintiff's
12  allegations and has admitted solely that plaintiff was removed from the yard and informed he
13  may not be able to "attend regular yard" for ten days. Plaintiff's claims that he was deprived of
14  all yard access for 30 days by defendant, including access for medically-necessary recreational
15  therapy, remain disputed. Thus, even if plaintiff's motion had been timely filed, it must be
16  denied.

**III.    Alleged Bad Faith of Defendant and Defense Counsel**

In opposing defendant's August 2, 2010 motion for summary judgment, plaintiff sought an order from the court determining that defendant's supporting declaration be determined to be in bad faith pursuant to Federal Rule of Civil Procedure 56(h). In findings and recommendations issued on February 17, 2011, the undersigned recommended denying plaintiff's motion for such an order, finding that plaintiff's assertions of bad faith were based simply in instances in which plaintiff's evidence presented a different version of events from defendant's evidence. Dckt. No. 74 at 8 ("The court cannot conclude that defendant is being dishonest simply because plaintiff presents different facts than defendant.").

////

6

Plaintiff now renews that motion, based on new evidence he has received in discovery – a "Confidential Supplement to Appeal" dated June 30, 2007 regarding the institutional investigation of plaintiff's claim that defendant denied him access to the yard. Dckt. No. 81, Ex. 2. In that document, the author states, "Sergeant Demars stated that he had no knowledge of Officer Vojkufka not allowing inmate Heilman access to the yard, and he had seen inmate Heilman several times during that period." *Id.* The investigative report concludes, "Officer Vojkufka did have [plaintiff] removed from the yard that day [April 4, 2007], but there is no evidence inmate Heilman was denied access to the yard on later dates." *Id.* Plaintiff points out that this information is in tension with defendant's declaration, in which he states, "I informed [plaintiff] that, per the orders of Sergeant Demars, he would not be allowed to attend exercise yard for ten days." Dckt. No. 40-1 at 2, ¶ 9. Presumably, if Sergeant Demars were himself responsible for denying plaintiff yard access, he would have so informed the individual preparing the investigative report on defendant and that information would have been included in the report.

While the tension between the Confidential Supplement to Appeal and defendant's declaration may be of some evidentiary value to plaintiff in trying to convince the factfinder that his version of events is credible over defendant's version of events, the court is unwilling to make the leap from this discrepancy to a conclusion that defendant and defense counsel have purposefully misled the court or otherwise acted in bad faith. Accordingly, the undersigned again recommends that plaintiff's request for a determination that defendant and defense counsel have acted in bad faith be denied.

**IV.    Motions to Compel**

Plaintiff has submitted two motions to compel. Defendant has filed no opposition to the motions, despite the passage of nearly two months. The court has previously had to order defendant to respond to many of plaintiff's motions and has admonished defense counsel of the obligation under this court's Local Rules to file an opposition or statement of no opposition to

7

1  any motion filed by plaintiff. Dckt. Nos. 54, 68. The court is unwilling to accord defendant this
2  deference again, and, under Local Rule 78-230(l), deems defendant's opposition waived.[4]
3  Accordingly, the court will consider the motions without the benefit of opposition from
4  defendant.

5        In the first motion to compel, plaintiff asks the court to order defendant to again
6  supplement responses to plaintiff's Interrogatories Nos. 13, 14, and 24[5] because plaintiff believes
7  the answers provided to be "evasive or incomplete." Dckt. No. 80.

8        In Interrogatory No. 13, plaintiff asked, "What were the facts surrounding the removal of
9  inmates from the N-Tower yard 'after' the altercation on 4-4-2007?" Defendant originally
10  objected that the question was "vague and ambiguous as to which inmates Plaintiff is referring,"
11  but responded that "assuming Plaintiff is asking the circumstances surrounding his removal from
12  the yard following the incident between inmates Kellums and Parrish, Plaintiff was removed
13  because he began shouting and I believed that his refusal to follow orders to get down might lead
14  to further disruption on the yard. Once Plaintiff finally complied with orders, he was placed in
15  restraints and escorted from the yard." The court found that defendant had not fully responded
16  to the request for facts surrounding the removal of inmates from the yard following the fight, and
17  ordered defendant to provide a supplemental response, to the extent that defendant had

---

[4] In cases in which one party is incarcerated and proceeding without counsel, motions ordinarily are submitted on the record without oral argument. E.D. Cal. R. 230(l). "Opposition, if any, to the granting of the motion shall be served and filed by the responding party not more than twenty-one (21) days after the date of service of the motion." *Id.* "A responding party who has no opposition to the granting of the motion shall serve and file a statement to that effect, specifically designating the motion in question. Failure of the responding party to file an opposition or to file a statement of no opposition may be deemed a waiver of any opposition to the granting of the motion and may result in the imposition of sanctions." *Id.* Furthermore, a party's failure to comply with any order or with the Local Rules "may be grounds for imposition of any and all sanctions authorized by statute or Rule or within the inherent power of the Court." E.D. Cal. R. 110.

[5] The court uses the interrogatory numbers originally assigned by the plaintiff and referred to by the court in its order on plaintiff's prior motion to compel, Docket No. 74. The parties have since utterly confused the numbering of plaintiff's interrogatories.

knowledge of other inmates being removed from the yard following the fight.  Dckt. No. 74 at 20-21.

Defendant's supplemental response provided, "I did not assist in taking any other inmates off the yard.  As I recall the only inmates who were removed from the yard in restraints were inmate[s] Kellums and Parrish."  Dckt. No. 80 at 8.  Plaintiff argues that this response is vague and incomplete because it does not include "the reasons for removing the plaintiff, the combatants and those inmates wearing headphones from the yard."  However, defendant's original response explained why, in defendant's view, plaintiff was removed from the yard.  As for the other inmates, plaintiff's interrogatory did not specifically request the reasons they were removed from the yard.  The court finds that plaintiff has not shown that further response to Interrogatory No. 13 is called for.

In Interrogatory No. 14, plaintiff asked, "List the names of ALL the inmates removed from the N-Tower exercise yard on 4-4-2007."  Defendant originally responded, "All of the inmates who were on the yard were removed and the yard was closed down for the day following the altercation between Inmates Kellums, Parrish, and following Plaintiff's outburst."  Plaintiff sought to compel a further response to obtain the names of several inmates who were removed at the same time he was while the other inmates remained.  Dckt. No. 65 at 9.  The court concluded that defendant should reasonably have understood that plaintiff sought the names of the inmates who were separately removed from the yard, rather than a response that all the inmates were eventually "removed."  Dckt. No. 74 at 21.

Defendant's supplemental response provided, "The only other inmates that I recall being removed from the yard in restraints were inmates Kellums and Parrish."  Plaintiff objects to defendant's limitation of his response to those inmates who were removed "in restraints," as the interrogatory contained no such limitation, and seeks the names of all inmates removed from the yard.  However, in his prior motion to compel, plaintiff represented that he sought the names of the inmates separately removed from the yard, not the names of all inmates who were on the

9

1  yard and were removed when the yard was closed down.  The court ordered defendant to respond
2  accordingly and did not order him to provide the names of all inmates removed when the yard
3  was closed down.  The court concludes that plaintiff has not shown that further response to
4  Interrogatory No. 14 is called for.

5  In Interrogatory No. 24, plaintiff asked, "Please explain the facts of why you did not
6  count inmates attending the N-2 yard at 9:00 a.m. as documented on an unofficial yard log book
7  submitted as an exhibit to the Court for the day of April 3, 2007."  Defendant originally objected
8  to the request as vague, ambiguous, argumentative, assuming facts not established, and not
9  reasonably calculated to lead to the discovery of admissible evidence, but responded that "the
10 inmates were counted at yard.  Recreational therapy yard keeps a list, but that is kept by medical
11 staff."  Plaintiff sought a further response, arguing that defendant did not answer the question
12 posed.  Dckt. No. 65 at 13-14.  The court agreed that defendant did not answer why he
13 personally did not count the inmates, instead making use of the passive voice to vaguely respond
14 that the inmates "were counted" and ordered a supplemental response.  Dckt. No. 74 at 23.

15 Defendant's supplemental response provided, "As I recall, I counted the inmates that day
16 as they went out to the yard.  The inmates wear identification cards which are taken as they go to
17 yard.  Once all inmates are on the yard, I count the identification cards, then count the inmates
18 on the yard to make sure they match."  Dckt. No. 80 at 9.  Plaintiff argues that this response is
19 evasive because he did not ask for the procedure for counting inmates but rather why defendant
20 did not perform a count on the day in question, "as documented in the unofficial yard log
21 provided as an exhibit to the Defendant's Motion for Summary Judgment."  Dckt. No. 80 at 4.
22 The court concludes that defendant has adequately responded to the interrogatory; he has
23 informed plaintiff that he recalls that he did count the inmates.  Plaintiff may believe that this
24 response creates a conflict with other evidence in the case, but defendant has answered the
25 question and no further response to Interrogatory No. 24 is called for.
26 ////

1  Accordingly, plaintiff's motion to compel further responses to Interrogatories Nos. 13, 14, and 24 is denied.

### V.  Order and Recommendation

Based on the foregoing analysis, it is hereby ORDERED that plaintiff's March 29, 2011 motions to compel (Docket Nos. 80 and 81) is denied.

Further, it is RECOMMENDED that:

1. Defendant's March 29, 2011 motion to strike (Docket No. 79) be granted, and plaintiff's March 8, 2011 motion for summary judgment/judgment on the pleadings (Docket No. 77) be stricken; and

2. Plaintiff's renewed request that the court determine that defendant and defense counsel have acted in bad faith (Docket No. 81) be denied.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  September 19, 2011.

/s/ Edmund F. Brennan
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE